Kevin Cooper
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, N.J. 07068
(973) 994-1700 phone
kcooper@carellabyrne.com
decklund@carellabyrne.com

Jeffrey C. Block
Jacob A. Walker
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH HAUSER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ORGANON & CO., KEVIN ALI, and MATTHEW WALSH,<br><br>Defendants. | Case No. 2:25-cv-05322<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE OPERATING ENGINEERS FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF COUNSEL, AND CONSOLIDATION OF ALL RELATED ACTIONS** |
| BARRY J. LERNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ORGANON & CO., KEVIN ALI, MATTHEW WALSH and JUAN CAMILO ARJONA FERREIRA,<br><br>Defendants. | Case No. 2:25-cv-12983 |

The Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Operating Engineers") respectfully submits this memorandum of law in support of its motion for: (1) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*; (2) approval of the Operating Engineers' selection of Block & Leviton LLP as Lead Counsel and Carella, Byrne, Cecchi, Brody & Agnello, P.C. as Liaison Counsel for the proposed class; (3) consolidation of the above-captioned related cases; and (4) any other relief that the Court may deem just and proper.

## I. INTRODUCTION

The above-captioned related cases ("Related Actions") are putative securities class action lawsuits on behalf of investors who purchased or otherwise acquired securities of Organon & Co. ("Organon" or the "Company") between November 3, 2022, to April 30, 2025, inclusive (the "Class Period"), against Organon, Kevin Ali, Matthew Walsh, and Juan Camilo Arjona Ferreira ("Defendants") for violations of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Specifically, pursuant to the PSLRA, the Court must decide whether to consolidate the Related Actions before selecting a movant to lead this litigation on behalf of the putative class. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). As discussed below, the Related Actions should be consolidated pursuant to Rule 42(a) because they each involve similar legal and factual issues. Additionally, the Court must appoint as Lead Plaintiff the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The PSLRA requires the Court to appoint as Lead Plaintiff the movant who: (1) makes a timely motion under the PSLRA's sixty-day deadline; (2) asserts the

largest financial interest in the litigation; and (3) satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The Operating Engineers submit that it is the presumptively "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. The Operating Engineers are precisely the sort of institutional investors Congress envisioned would lead securities class actions when it passed the PSLRA. It filed a timely motion, has the largest known financial interest in the relief sought by the Class, its claims are typical of all members of the Class, and it will fairly and adequately represent the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

In addition, the Operating Engineers' selection of Block & Leviton LLP ("Block & Leviton") as Lead Counsel and Carella, Byrne, Cecchi, Brody & Agnello P.C. ("Carella") as Liaison Counsel, law firms with extensive experience prosecuting complex securities class actions, is reasonable and should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II. FACTUAL BACKGROUND

Organon is a healthcare company headquartered in New Jersey that delivers health solutions to women through prescription therapies and medical devices. ¶18.[1] The Complaint alleges that throughout the Class Period, Defendants misrepresented Organon's capital allocation plan by repeatedly touting a future shareholder dividend as the Company's "number one priority" when in fact Organon faced significant price deterioration risk to its key product, Nexplanon, that would affect its sales growth, and had recently implemented a debt reduction strategy, both of which would lead to a drastic decrease of the dividend.

---

[1] Citations to "¶__" refer to paragraphs of the Complaint, *Hauser v. Organon & Co., et al.*, No. 2:25-cv-05322 (D.N.J. May 23, 2025), Dkt. 1.

The Class Period starts on November 3, 2022.[2] On that day, Organon published a press release announcing the Company's third quarter 2022 financial results and hosted a corresponding earnings call. On the call, Defendant Walsh claimed that the strong free cash flow of upwards of $1 billion per year would continue to support the outsized dividend, stating that "[p]art of the Organon investment thesis for stakeholders is that the standalone business generates significant free cash flow. We set the dividend at a rate that would imply that we expect Organon to generate north of $1 billion of free cash flow per year, and that basic math still holds." Defendant Walsh went on to emphasize that "[o]ur capital allocation priorities remain consistent with past communications. Our first priority, of course, is servicing the dividend . . ."

Throughout the Class Period, Defendants repeatedly affirmed that that the outsized dividend payout was the Company's number one priority. As a result, Organon stock traded at a high premium compared to other healthcare stocks. Up until less than three months before the end of the Class Period, Organon emphasized their commitment to the dividend as the Company's "#1 capital allocation priority." ¶21.

The Complaints allege that the truth was revealed on May 1, 2025, when Organon published a press release announcing first quarter 2025 results which disclosed that management had reset the Company's dividend payout from $0.28 to $0.02 and that those funds would be redirected to debt reduction. On an earning call shortly after posting the results, CEO Ali stated that "[w]ith a reduced dividend payout, the company can redeploy almost $200 million in prospective dividend payments over the remainder of 2025 that will enable a path to achieve a net

---

[2] For the purposes of appointing lead plaintiff in cases involving two potential class periods, courts use the longer class period in the analysis. *See, e.g., Hom v. Vale, S.A.*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) ("[T]he use of the longer, more inclusive class period is proper for purposes of the present motion because the longer class period encompasses more potential class members and damages.") (quotations omitted) (collecting cases).

leverage ratio below 4 by year-end," and CFO Walsh stated "[t]he biggest issues we face that can improve Organon's valuation in the near term relate to managing our leverage and relate to growth. And we need capital to solve both of those issues, and so returning capital to shareholders is right now, less of a priority. It's one of the reasons why we made the move that we did with the dividend announcement today." ¶¶25, 26. On this news, the price of Organon stock fell more than 27%, from a closing market price of $12.93 per share on April 30, 2025, to $9.45 per share on May 1, 2025. ¶29.

Due to these alleged misrepresentations and omissions, the Operating Engineers and other Class members have suffered significant losses and damages.

## III.  ARGUMENT

### A.  This Court Should Consolidate the Related Actions to Promote Efficiency

"The PSLRA directs the Court to first determine whether to consolidate related actions before appointing a lead plaintiff and approving lead counsel." *Patel v. Coinbase Glob., Inc.*, 2022 WL 17582549, at *2 (D.N.J. Dec. 12, 2022) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Rule 42(a) allows consolidation of actions "involving a common question of law or fact" to "avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a). "Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated." *In re Lucent Tech., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001). "Courts have recognized that class action shareholder suits are particularly well suited to consolidation pursuant to Rule 42(a) because unification expedites pretrial proceedings, reduces case duplication, avoids the need to contact parties and witnesses for multiple proceedings, and minimizes the expenditure of time and money for all parties involved." *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *3 (N.D. Cal. June 10, 2014).

The Operating Engineers' motion for consolidation should be granted. The Related Actions concern the same conduct: the Company's misrepresentations regarding an outsized shareholder dividend payout being its capital allocation priority. That the *Lerner* action asserts a longer class period and names an additional defendant is of no matter. Both actions assert the same claims on behalf of Organon stockholders, "based on substantially the same alleged conduct, for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder." *Patel*, 2022 WL 17582549 at *2 (holding that although one of the actions names an additional defendant and asserts a longer class period, "common questions of law and fact predominate over these minor discrepancies"); *see also In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) ("[D]iffering class periods alone will not defeat consolidation or create a conflict . . . The dates on which the misrepresentations occurred do not change their nature.") (collecting cases).

## B. The Operating Engineers Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i). First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising class members "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. §78u-4(a)(3)(A)(i).

The statutory notice in connection with the first-filed *Hauser* case was published on May 23, 2025. *See* Declaration of Kevin Cooper in Support of Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Counsel ("Cooper Decl."), Ex. A.

Next, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class the Court determines to be most capable of adequately representing the interests of other class members. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA also provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

(aa) has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

The Operating Engineers is a sophisticated institutional investor and is exactly what Congress envisioned being a lead plaintiff in a securities class action. Appointing an institutional investor "fulfill['s] Congress' preference, implicit in the PSLRA, to have institutional investors serve as lead plaintiffs in securities class actions." *Halman Aldubi Provident and Pension Funds Ltd. V. Teva Pharmaceuticals, Inc.* 529 F. Supp. 3d 385, 398 (E.D. Pa. 2021), *citing In re Cendant Corp. Litig.*, 264 F. 3d  201. 244 (3d Cir. 2001) ("the PSLRA's legislative history expressly states that Congress anticipated and intended that such investors would serve as lead plaintiffs.") As we discuss, the Operating Engineers, the paradigmatic lead plaintiff, is typical and adequate and motivated to seek redress for its and class members' losses.

The Operating Engineers should therefore be appointed Lead Plaintiff.

### 1.  The Operating Engineers' Motion Is Timely

The statutory notice published on May 23, 2025, advised Class members of the pendency of the action, the claims asserted, the proposed Class Period, and the right to move the Court to be appointed as lead plaintiff by July 22, 2025. *See* Cooper Decl., Ex. A. Because the Operating Engineers' motion has been filed by the statutory deadline, it is eligible for appointment as Lead Plaintiff.

### 2.  The Operating Engineers Have a Substantial Financial Interest in the Relief Sought by the Class

As evidenced by its certification and loss charts, the Operating Engineers purchased significant amounts of Organon securities and suffered approximately $252,467.48 in losses as a result of Defendants' violations of the federal securities laws. *See* Cooper Decl., Exs. B, C. To the best of the Operating Engineers' counsel's knowledge, there are no other plaintiffs with a larger financial interest.

### 3.  The Operating Engineers Are Typical and Adequate

In addition to possessing a significant financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "At this stage of the litigation, the Court's examination of Rule 23 should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy, and only a preliminary showing of both is required." *Hull v. Glob. Digital Sols., Inc*, 2016 WL 11694788, at *2 (D.N.J. Nov. 10, 2016) (quotations omitted).

"[I]n inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based." *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (citing *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d

Cir.1988)) (marks omitted). To demonstrate adequacy, a movant must show that it "has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *Id.* (marks omitted).

Here, the Operating Engineers' claims are typical of those of the Class because–like all Class members–it purchased Organon securities during the Class Period, suffered damages as a result of Defendants' false and misleading statements, and possess claims against Organon and the Individual Defendants under the Exchange Act. *See, e.g. Lewis v. Lipocine Inc.*, 2016 WL 7042075, at *5 (D.N.J. Dec. 2, 2016) (holding that movant was typical where its claims arise out of the same events alleged in the complaints).

The Operating Engineers' claims are adequate because its interests in the action are squarely aligned with the interests of the other members of the Class. The Operating Engineers are highly incentivized to maximize the recovery for all Class members harmed by Defendants' misrepresentations and omissions based on, among other things, the substantial losses that it suffered. As set forth in greater detail below, the Operating Engineers' adequacy is bolstered by its hiring of Block & Leviton and Carella–highly qualified counsel with significant success prosecuting federal securities class actions–to serve as Lead and Liaison Counsel. *See Kelley v. Aerie Pharms., Inc.*, 2015 WL 4545654 at *1 (D.N.J. July 28, 2015) (noting that the lead plaintiff is preliminarily adequate because its chosen lead and liaison counsel "have considerable experience with securities class actions and excellent reputations" and "[t]here are no other indications that the [movant's] interests are antagonistic to the other class members.")

Moreover, the Operating Engineers fully understand the obligations of a Lead Plaintiff to absent Class members under the PSLRA and are willing and able to undertake these

8

responsibilities to ensure vigorous and efficient prosecution. Accordingly, the Operating Engineers readily satisfy the adequacy requirement.

Because the Operating Engineers filed a timely motion, believes it has the largest financial interest in the relief sought by the Class, and demonstrated its preliminary typicality and adequacy, the Court should adopt the presumption that the Operating Engineers are the "most adequate" plaintiff.

### C. The Court Should Approve the Operating Engineers' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Operating Engineers have selected Block & Leviton as Lead Counsel and Carella as Liaison Counsel. Both firms have substantial experience in the prosecution of shareholder and securities class actions. Cooper Decl., Exs. D, E. As noted by one district court,

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation* (N.D. Cal.). I find the experience garnered from such representations will benefit the shareholder in this suit.

*Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21).

Courts in this district have likewise recognized Carella's adequacy. *See, e.g. Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton, Dickinson & Co.*, 2020 WL 3056281, at *2 (D.N.J. June 9, 2020) (describing Carella as "highly qualified and experienced in securities fraud class action litigation."); *City of Warren Gen. Employees; Ret. Sys. v. Celgene Corp.*, 2018 WL 4629570, at *2 (D.N.J. Sept. 26, 2018) ("Carella Byrne . . . [has[ substantial experience litigating class actions.")

9

Accordingly, the Operating Engineers' selection of Block & Leviton as Lead Counsel and Carella as Liaison Counsel is reasonable and should be approved.

## IV.    CONCLUSION

For the foregoing reasons, the Operating Engineers move this Court for an order: (1) appointing the Operating Engineers as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, et seq.; (2) approving the Operating Engineers' selection of Block & Leviton LLP as Lead Counsel and Carella, Byrne, Cecchi, Brody & Agnello, P.C. as Liaison Counsel for the proposed class; (3) consolidating the above-captioned related cases; and (4) granting such other and further relief as the Court may deem just and proper.

DATED:  July 22, 2025                    Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Jacob A. Walker
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
jeff@blockleviton.com
jake@blockleviton.com

*Counsel for Lead Plaintiff Movant Operating Engineers and Proposed Lead Counsel for the Class*

*s/ Kevin Cooper*
Kevin Cooper
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, N.J. 07068
(973) 994-1700 phone
kcooper@carellabyrne.com
decklund@carellabyrne.com

*Counsel for Lead Plaintiff Movant Operating Engineers and Proposed Liaison Counsel for the Class*

11