POMERANTZ LLP
Matthew L. Tuccillo
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
mltuccillo@pomlaw.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and Proposed Lead Counsel for the Class*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH HAUSER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ORGANON & CO., KEVIN ALI, and MATTHEW WALSH,<br><br>Defendants. | Case No.  2:25-cv-05322-JXN-CLW<br><br>Hon. Julien Xavier Neals<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL<br><br>Motion Date: August 18, 2025 |

*- caption continues on following page -*

BARRY J. LERNER, Individually and on behalf of all others similarly situated,

                    Plaintiff,

        vs.

ORGANON & CO., KEVIN ALI, MATTHEW WALSH and CAMILO ARJONA FERREIRA,

                    Defendants.

Case No.  2:25-cv-12983-JXN-CLW

Hon. Julien Xavier Neals

CLASS ACTION

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .....................................................................2

II.   STATEMENT OF ALLEGED FACTS .........................................................5

III.  ARGUMENT....................................................................................................10

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........10

    B.    NSHEPP SHOULD BE APPOINTED LEAD PLAINTIFF ..............11

    C.    NSHEPP IS WILLING TO SERVE AS A
        CLASS REPRESENTATIVE ............................................................13

        1.    NSHEPP Is the Most Adequate Plaintiff Within the
            Meaning of the PSLRA...............................................................18

            a.    NSHEPP Has the "Largest Financial Interest" in
                the Related Actions.........................................................19

            b.    NSHEPP Otherwise Satisfies the Requirements of
                Rule 23.................................................................................21

            c.    The Presumption Favoring NSHEPP Cannot
                Be Rebutted ...................................................................25

    D.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
        BE APPROVED...................................................................................26

IV.   CONCLUSION................................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ..................................................................21

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975).........................................................................17

*Christian v. BT Group PLC*,
  Civ. Act. No. 17-cv-00497, 2017 WL 3705804
  (D.N.J. Aug. 28, 2017)......................................................................24

*City of Warren Gen. Employees' Retirement Sys. v. Celgene Corp.,
  Inc.*,
  Civ. A. Nos. 18-4772, 18-8785, 2018 WL 4629570
  (D.N.J. Sept. 26, 2018) .................................................................10, 11

*Edwards v. McDermott Int'l, Inc.*,
  Civ. Act. No. 4:18-cv-04330 (S.D. Tex.) ......................................16, 27

*Grodko v. Cent. European Distribution Corp.*,
  Civ. Act. No. 12-5530, 2012 WL 6595931 (D.N.J. Dec. 17, 2012)...................24

*Hauser v. Organon & Co.*,
  Civ. Act. No. 2:25-cv-05322-JXN-CLW ....................................*passim*

*Himes v. Five Below, Inc.*,
  Civil Act. Nos. 24-3638, 24-4905, 2024 WL 4596235
  (E.D. Pa. Oct. 28, 2024)....................................................................20

*In re BP p.l.c. Securities Litigation*,
  4:10-md-02185 (S.D. Tex.)..................................................................18

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ....................................................19, 22, 24

*In re Emergent Biosolutions, Inc. Sec. Litig.*,
  Civ. Act. No. 21-CV-00955, 2025 WL 654108
  (D. Md. Feb. 27, 2025) ...........................................................15, 23, 27

*In re MINISO Group Holding Limited Securities Litigation*,
    1:22-cv-09864 (S.D.N.Y.) ...............................................................16, 27

*In re Petrobras Securities Litigation*,
    Civ. Act. No. 14-cv-09662 (S.D.N.Y.) .............................................26

*In re Toronto-Dominion Bank Securities Litigation*,
    Civ. Act. No. 17-cv-01735 (D.N.J.) ..................................................27

*Kanefsky v. Honeywell Int'l Inc.*,
    Civ. Act. No. 18-15536, 2019 WL 936662 (D.N.J. 2019) ................................21

*Lax v. First Merchants Acceptance Corp.*,
    Civ. Act. Nos. 97 C 2715, 2716, 2737, 3791, 3767, 4237, 4013,
    4236, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ........................................19, 20

*Lerner v. Organon & Co.,*
    Civ. Act. No. 2:25-cv-12983-JXN-CLW ....................................................*passim*

*Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*,
    Civil Act. Nos.: 15-cv-7350, 15-cv-7380, 15-cv-07448,
    2016 WL 3032684 (D.N.J. May 26, 2016)....................................................21, 23

*Montesano v. Eros International PLC*,
    Civil Act. Nos. 19-14125, 19-14445, 19-18547, 2020 WL 1873015
    (D.N.J. Apr. 14, 2020) ..................................................................22

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010)....................................................................17

*Nova Scotia Health Employees' Pension Plan v. BP, plc,*
    Civ. Act. No. 4:13-cv-03397 (S.D. Tex.) ................................................18

*Patel v. Coinbase Glob., Inc.*,
    Civ. Act. No. 22-4915, 2022 WL 17582549 (D.N.J. Dec. 12, 2022)................10

*Pelletier v. Endo Int'l PLC*,
    316 F. Supp. 3d 846 (E.D. Pa. 2018).................................................25

*Phetteplace v. Cancer Genetics, Inc.*,
    2018 WL 11233227 (D.N.J. 2018) ....................................................23

iii

*Ramos v. Comerica Incorporated*,
 2:23-cv-06843-SB-JPR (C.D. Cal.) ..............................................................17, 27

*Roby v. Ocean Power Tech., Inc.*,
 Civ. A. Nos. 14-cv-3799, 14-cv-3815, 14-cv-4015, 14-cv-4592,
 2015 WL 1334320 (D.N.J. Mar. 17, 2015) .................................................11, 26

*Rubenstahl v. Philip Morris Int'l, Inc.*,
 Civ. Act. No. 17-13504, 2019 WL 585429 (D.N.J. Feb. 13, 2019) ...................19

*Smith v. Antares Pharma, Inc.*,
 Civ. Act. No. 17-8945, 2018 WL 3611067 (D.N.J. July 27, 2018) ...................19

*Stires v. Eco Science Solutions, Inc.*,
 Civ. A. Nos. 17-3707, 17-3760, 17-5161, 2018 WL 5784817
 (D.N.J. Feb. 14, 2018) .......................................................................................11

**Statutes**

15 U.S.C. §78u-4 ...................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ............................................*passim*

Securities Act of 1933 ..........................................................................................16

Securities Exchange Act of 1934 .......................................................................*passim*

Securities Litigation Uniform Standards Act of 1998 ............................................17

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................*passim*

Fed. R. Civ. P. 42 ...................................................................................1, 2, 10

Movant Nova Scotia Health Employees' Pension Plan ("NSHEPP") respectfully submits this Memorandum of Law in support of its lead plaintiff motion ("Motion"), pursuant to Fed. R. Civ. P. 42 and Section 21D(a)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (i) consolidating the above-captioned securities fraud class actions (the "Related Actions"); (ii) appointing NSHEPP as Lead Plaintiff to oversee the consolidated action on behalf of a class ("Class") of all persons who purchased or otherwise acquired the securities of Organon & Co. ("Organon") during the class period at issue in this consolidated action ("Class Period"), as may be adjusted, currently extending from November 3, 2022 through April 30, 2025, both dates inclusive;[1] and (iii) approving proposed Lead Plaintiff NSHEPP's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

---

[1] The initial complaint in *Hauser v. Organon & Co.*, Civ. Act. No. 2:25-cv-05322-JXN-CLW ("*Hauser* Action"), Dkt. No. 1 ("*Hauser* Complaint," with paragraphs cited as "*Hauser* ¶"), alleges a shorter class period extending from October 31, 2024 through April 30, 2025, both dates inclusive. *Hauser* Complaint ¶1. The initial complaint in *Lerner v. Organon & Co.*, Civ. Act. No. 2:25-cv-12983-JXN-CLW ("*Lerner* Action"), Dkt. No. 1 ("*Lerner* Complaint," with paragraphs cites as "*Lerner* ¶") alleges a longer Class Period extending from November 3, 2022 through April 30, 2025, both dates inclusive. *Lerner* Complaint ¶1. Consistent with PSLRA jurisprudence (as discussed *infra* at Section III.B.2.a.), the Court should adopt the longer *Lerner* Class Period for purposes of assessing financial interest, and all capitalized references to the "Class Period" herein refer to the longer class period alleged in *Lerner*.

## I.    PRELIMINARY STATEMENT

The initial complaints in the Related Actions allege that Defendants Organon, Kevin Ali, Matthew Walsh, and Camilo Arjona Ferreira[2] (altogether, the "Defendants") defrauded investors in violation of Exchange Act §§10(b) and 20(a), causing Organon investors, including NSHEPP, to incur significant losses following the disclosure of the alleged fraud, which caused the prices of Organon securities to fall sharply, damaging NSHEPP and the Class members.

The PSLRA requires this Court to first resolve the issue of consolidation, before appointing a lead plaintiff.  15 U.S.C. §78u-4 (a)(3)(B)(ii).  Consolidation is appropriate under Fed. R. Civ. P. 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are both putative class actions alleging violations of the Exchange Act by overlapping groups of Defendants, arising from substantially the same alleged fraud, during overlapping time periods.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, under 15 U.S.C. §78u-4(a)(3)(B)(i), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests

---

[2]    Messrs. Ali and Walsh are named as Defendants in both Related Actions.  Mr. Ferreira is named as a Defendant in *Lerner* only.

of class members (hereinafter . . . the 'most adequate plaintiff')."  The PSLRA creates a rebuttable presumption favoring the movant that, "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

NSHEPP believes itself to be the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.  During the Class Period, NSHEPP: (1) purchased or acquired 101,600 shares of Organon common stock; (2) expended $1,864,702 on Organon common stock; (3) retained 101,600 shares of Organon common stock when the Defendants' alleged fraud was revealed; and (4) incurred losses of approximately $903,843.  *See* Declaration of Matthew L. Tuccillo in Support of Motion ("Tuccillo Decl."), Exhibit ("Ex.") A.  Accordingly, NSHEPP believes that it has the largest financial interest in the relief sought.

Beyond its considerable financial interest, NSHEPP also meets the applicable requirements of Rule 23 because its claims are typical of absent Class members and it will fairly and adequately represent the Class's interests.  As a sophisticated institutional investor, NSHEPP is a paradigmatic lead plaintiff under the PSLRA, and its appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions."  H.R. Conf. Rep.

No. 104-369, at 34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.  Indeed, Congress specifically highlighted the unique role of pension funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect the interest of class members.  *Id.*  For this reason, courts in the Third Circuit, and this Judicial District, strongly prefer appointment of institutional investors to lead complex securities class actions.  Moreover, NSHEPP has considerable securities litigation experience, including serving as court-appointed PSLRA lead plaintiff in several securities class action lawsuits, including one involving Emergent Biosolutions, Inc. ("Emergent"), in which NSHEPP secured a recently-approved $40 million class-wide settlement.  NSHEPP has also successfully pursued and resolved individual securities opt-out litigation involving BP p.l.c. ("BP") that resulted in a favorable, confidential monetary settlement.

To fulfill its obligations as Lead Plaintiff and vigorously prosecute the consolidated action on behalf of the Class, NSHEPP has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume and discussed below.  Pomerantz has represented NSHEPP since 2013, demonstrating a strong working relationship and a track record of success.

4

NSHEPP respectfully asks the Court to enter an Order consolidating the Related Actions for all purposes, appointing NSHEPP Lead Plaintiff for the Class, and approving its selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF ALLEGED FACTS

As alleged in the Complaints filed in the Related Actions, Organon develops and delivers healthcare solutions through prescription therapies and medical devices in the U.S. and internationally. *Hauser* ¶18; *Lerner* ¶15. Organon's women's health division specializes in a category of Long-Acting Reversible Contraception products, referred to as "LARCs." *Lerner* ¶16.

Before a new drug may be marketed in the U.S., recorded data on pre-clinical and clinical investigations are included in a New Drug Application ("NDA") for a drug or a Biologics License Application for a biologic (or generic) and submitted to the U.S. Food and Drug Administration ("FDA") for the required approval. *Lerner* ¶17. Obtaining regulatory approval to manufacture and sell a new drug or device through the NDA process is the longer, more arduous and expensive process. *Id.*

It is typically much less burdensome and costly to obtain approval for a biosimilar or a generic drug approved. *Lerner* ¶18. A biosimilar is a biological product that is highly similar to and has no clinically meaningful differences from an existing FDA-approved reference product (the original biologic). *Id.* The FDA has an abbreviated approval pathway for biosimilars, the 351(k) pathway, which

5

only requires demonstrating biosimilarity to another FDA-approved reference product, which allows manufacturers to avoid duplicating the extensive clinical trials required for a reference product, potentially leading to faster approval and increased patient access. *Id.*

On May 13, 2011, the FDA granted an NDA to commercially manufacture and distribute Etongestrel (a form of progestin) in the form of an implant (or "rod") inserted and left in women's upper arms, under the trade name Nexplanon. *Id.* ¶19.

On May 14, 2021, Organon was spun off from Merck in a spin-off transaction completed as a tax-free distribution to Merck shareholders, with each receiving one-tenth of an Organon share for each share of Merck then owned. *Lerner* ¶19. Merck also licensed its Nexplanon patent rights to Organon. *Id.* As the Class Period began, Organon's leading LARC was Nexplanon, a contraceptive implant that is inserted under the skin of the upper arm and provided continuous pregnancy prevention for up to three years. *Lerner* ¶16. Organon's common stock was listed on the New York Stock Exchange, opening at $31.00 per share that day. *Id.*

The spin-off transaction left Organon highly leveraged, as it took on billions of dollars in additional debt to pay Merck a large, one-time dividend. *Lerner* ¶20. However, Organon still stock traded at a high premium compared to other healthcare stocks thereafter because Organon promised to pay an outsized dividend to its shareholders of more than $1 per share pursuant to what it would repeatedly refer to

6

throughout the Class Period as its *"*#1 capital allocation priority." *Hauser* ¶¶21-23; *Lerner* ¶20. Organon also promised to keep a debt to asset ratio (or "net leverage") of below 4x, which was needed to keep a sufficient corporate debt rating and to lower its costs of capital. *Lerner* ¶20. As such, continued strong sales growth of its key branded product offering, Nexplanon, was critical. *Id.*

At all relevant times, Organon represented that the Nexplanon patent rights licensed from Merck in the spin-off would not expire until 2027, purportedly giving Organon exclusivity through that date. *Lerner* ¶21. It also represented that the licensed patent rights for the key aspects of the Nexplanon applicator were valid through 2030. *Id.* Organon repeatedly claimed that this purported exclusivity gave it significant pricing power over Nexplanon for at least the following six years by shielding it from competition. *Id.*

Critically, though, Organon merely had licensed the patent on the Nexplanon implant and the key aspects of the Nexplanon applicator, not on the active drug, progestin (a synthetic form of progesterone). *Lerner* ¶22. Moreover, while other companies generally cannot market a biosimilar version of the Nexplanon implant while its patent protection remains in effect, companies developing biosimilar versions of the Nexplanon implant can use legal and regulatory tactics to prepare for and potentially even launch competing products before or upon patent expiry, *e.g.*, by addressing patent challenges through litigation or settlement and seeking FDA

7

approval via abbreviated biosimilar pathways. *Id.* ¶23. Critically, as a major purveyor of biosimilars itself, Organon and its senior executives well understood these risks. *Id.* ¶¶23-24.

Thus, despite Defendants' claims and implications to the contrary throughout the Class Period, in reality: (i) Organon then faced significant loss of exclusivity and price deterioration risk as to Nexplanon sooner than Defendants' Class Period statements indicated; (ii) Defendants' Class Period statements regarding Nexplanon sales growth were exaggerated; (iii) Organon was likely not on track to maintain the sub-4.0x debt leverage Defendants claimed; (iv) consequently, Organon was unable to maintain its corporate debt ratings at a high enough level to keep its corporate capital costs as low as Defendants' Class Period statements indicated; and (v) as a result, Organon lacked reasonable basis for its reported Class Period business metrics and financial projections. *Hauser* ¶23; *Lerner* ¶26.

The truth regarding Defendants alleged misstatements began to be revealed through a sequence of partial corrective disclosures. On May 1, 2025, Organon announced Q1 2025 financial results and shocked the investment community by slashing its dividend by 90%, from $0.28 per share per quarter ($1.16 per share annually) to just $0.02 per share per quarter (or $0.08 per share annually). *Hauser* ¶¶ 24-25, 34-35; *Lerner* ¶78. Its press release that day quoted Defendant Ali as saying Oreganon had "reset [its] capital allocation priorities to accelerate progress

8

towards deleveraging, enabling a path to achieve a net leverage ratio of below 4.0x by year-end," emphasizing that its "primary capital allocation priority" was now "maintaining lower leverage." *Hauser* ¶24; *Lerner* ¶78. During a related earnings call, Defendant Walsh admitted that Organon needed to slash the dividend to manage its debt load and grow revenue from other products. *Hauser* ¶¶ 26-27; *Lerner* ¶79. During the Q&A segment of the call, he reiterated that "[t]he biggest issues we face that can improve Organon's valuation in the near term relate to managing our leverage and relate to growth," emphasizing "we need capital to solve both of those issues." *Hauser* ¶26-27; *Lerner* ¶80.

On this news, Organon's common stock price cratered, falling over $3 per share – or 27% – from its prior closing price of $12.93 per share to close at $9.45 per share on May 1, 2025. *Hauser* ¶¶4, 29; *Lerner* ¶81.

On May 2, 2025, Organon disclosed in an SEC filing that it had filed a patent enforcement action in April 2025 against Xiromed, which had submitted to the FDA an ANDA for approval to market and sell a purported generic version of Nexplanon in the U.S. for infringement of certain Nexplanon patents. *Lerner* ¶¶77, 82. On this news, Organon common stock traded closed at $8.70 per share on Monday, May 5, 2025, the next trading day. *Id.*

As a result of Defendants' wrongful acts and omissions, and the resulting decline in the market value of Organon securities, NSHEPP and the Class suffered

9

significant losses and damages under the federal securities laws, which these lawsuits seek to recover. *Hauser* ¶33; *Lerner* ¶83.

## III.    ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Under the PSLRA, the question of consolidation must be resolved first:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the [lead plaintiff] determination…until after the decision on the motion to consolidate is rendered.

15 U.S.C. §78u-4 (a)(3)(B)(ii).

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication with risks of conflicting rulings. Pursuant to Fed. R. Civ. P. 42(a), consolidation is appropriate when the "actions before the court involve common questions of law *or* fact." *Id.* (emphasis added). "Consolidation is routinely granted where securities class actions 'involve common questions of law and fact, and consolidation will promote efficiency and avoid unnecessary costs or delay.'" *Patel v. Coinbase Glob., Inc.*, Civ. Act. No. 22-4915, 2022 WL 17582549, at *2 (D.N.J. Dec. 12, 2022) (quoting *City of Warren Gen. Employees' Retirement Sys. v. Celgene Corp., Inc.*, Civ. A. Nos. 18-4772, 18-8785, 2018 WL 4629570, at *1 (D.N.J. Sept. 26, 2018)).

10

The Related Actions involve common questions of law ***and*** fact. Each action was brought against Organon and its top officers in connection with alleged violations of the same provisions of the federal securities laws during overlapping class periods. Accordingly, the Related Actions allege substantially the same wrongdoing—namely that Defendants issued materially false and misleading statements that artificially inflated the price of Organon's securities and subsequently damaged the Class members when Organon's stock price plunged as the truth began to emerge. *Id.* Consolidation of the Related Actions is thus appropriate, despite minor differences. *See Stires v. Eco Science Solutions, Inc.*, Civ. A. Nos. 17-3707, 17-3760, 17-5161, 2018 WL 5784817, at *3 (D.N.J. Feb. 14, 2018) (consolidating securities class actions proposing different class periods because "[d]espite minor differences, the complaints center on the same set of operative facts during substantially the same time period"); *Roby v. Ocean Power Tech., Inc.*, Civ. A. Nos. 14-cv-3799, 14-cv-3815, 14-cv-4015, 14-cv-4592, 2015 WL 1334320, at *3 (D.N.J. Mar. 17, 2015) (consolidating securities class actions where "[a]ll four cases involve the same subject matter, are based on substantially the same conduct, and largely name the same defendants").

### B.    NSHEPP SHOULD BE APPOINTED LEAD PLAINTIFF

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of the PSLRA notice of an action, which in this case was published on

11

May 23, 2025 (the "Notice"), alerting potential Class members to the pendency of the first-filed *Hauser* Action (*see* Tuccillo Decl., Ex. B).  *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II).  The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of notice publication (30 days after the motion deadline), or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i) & (ii).  NSHEPP's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')."  *See* 15 U.S.C. §78u-4(a)(3)(B)(i).  NSHEPP is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  As set forth below, NSHEPP satisfies all three of these criteria and thus believes that

that it is the most adequate plaintiff within the meaning of the PSLRA, entitled to the statute's rebuttable presumption.  Specifically, NSHEPP is a sophisticated institutional investor, and moreover a pension fund, which is willing to serve as lead plaintiff, has the largest financial interest in the Related Actions to its knowledge, and otherwise strongly satisfies the requirements of Rule 23.

For these reasons, set forth in greater detail below, NSHEPP respectfully urges the Court to appoint it Lead Plaintiff overseeing the consolidated action.

## C.    NSHEPP IS WILLING TO SERVE AS A CLASS REPRESENTATIVE

On May 23, 2025, counsel for the initial plaintiff in the first-filed *Hauser* Action caused the statutorily required Notice of the *Hauser* Action to be published via *Globe Newswire* pursuant to §21D(a)(3)(A)(i) of the PSLRA.  *See* Tuccillo Decl., Ex. B.  It announced the filing of a putative securities fraud class action against Defendants and advised investors in Organon securities that they had until July 22, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff.  *Id.*

NSHEPP files this motion pursuant to the Notice and has attached a Certification signed by Stefan Cowell, CEO of NSHEPP, submitted as Tuccillo Decl., Ex. C.  Under the PSLRA, NSHEPP's actions were timely and legally sufficient.  Accordingly, NSHEPP readily satisfies the first requirement to serve as Lead Plaintiff for the Class.

13

NSHEPP is, in every respect, exactly the sort of well-managed, sophisticated institutional investor that Congress intended to fulfill the lead plaintiff role created by the PSLRA. NSHEPP is a comprehensive, defined benefit pension plan established in 1961 and jointly sponsored by Health Association Nova Scotia and four unions. NSHEPP is one of the largest registered pension plans in the Canadian Province of Nova Scotia, serving over 56,000 people, including 38,000 active members who work for 93 participating employers at over 150 sites throughout Nova Scotia, as well as 16,000 pensioners who receive a monthly income from NSHEPP and over 1,700 former employees who have elected a deferred pension. NSHEPP's oversight and administration is well-defined, multitiered, and robust. It is administered by a Board of eight Trustees, half selected by Health Association Nova Scotia and half selected by the four unions to which its members belong. The Board of Trustees is responsible for the Plan's overall operation, with day-to-day operations overseen by a CEO (who signed NSHEPP's Certification). As of December 2023, NSHEPP had over CAD $10.9 billion in assets, invested in a diversified manner, including over 40% in equities.

Significantly, NSHEPP is highly experienced in the prosecution of complex securities claims, both as a court-appointed PSLRA lead plaintiff in four securities class actions and in an individual capacity in securities opt-out litigation. NSHEPP's track record in prior, hard-fought, multi-year securities lawsuits – including its

14

recently-achieved $40 million settlement in the District of Maryland – demonstrates its competence, patience, diligence, and readiness to vigorously pursue a class-wide recovery in this Action.  Specifically:

• NSHEPP served as court-appointed PSLRA co-lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities fraud claims against Emergent and its CEO / President, and its SVP / Head of Contract Development and Manufacturing.  NSHEPP successfully opposed the motion to dismiss its 225-page amended complaint, which was largely denied in September 2023.  NSHEPP's motion for class certification was granted in June 2024. After considerable discovery, including production of 120,000 defendant and third party documents, a full-day mediation, and extensive post-mediation negotiations, NSHEPP secured a $40 million class-wide settlement, which was granted final approval, after zero Class member objections, in February 2025.  NSHEPP's motion to distribute the net settlement fund was granted in early July 2025.  *See In re Emergent Biosolutions Inc. Securities Litigation*, No. 8:21-cv-00955 (D. Md.).

• NSHEPP serves as court-appointed PSLRA lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities fraud claims arising under Exchange Act §10(b) against McDermott, its CEO / President, and its CFO.  NSHEPP has overseen hard-fought litigation of class-wide claims seeking recovery of up to $2 billion+ successfully through a corporate bankruptcy, past two

15

motions to dismiss, and through all of fact discovery involving production of over 450,000 defendant and third party documents and 40 fact depositions, after securing court rulings that compelled Defendants to run 200+ plaintiff-authored search terms across 50 plaintiff-selected custodians and to review 1.29 million search hit documents and compelled multiple third parties to sit for depositions. The court partially granted NSHEPP's class certification motion in June 2024, and the district court litigation is now stayed pending resolution of the parties' cross-appeals under Rule 23(f). *See Edwards v. McDermott Int'l, Inc.*, Civ. Act. No. 4:18-cv-04330 (S.D. Tex.).

• NSHEPP is court-appointed PSLRA lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities claims, brought under Exchange Act §10(b) and Securities Act §11, against MINISO, certain of its officers, its U.S. representatives, and, for certain claims, its underwriters. After an initial dismissal, NSHEPP is currently litigating Defendants' motion to dismiss NSHEPP's third amended complaint. *See In re MINISO Group Holding Limited Securities Litigation,* 1:22-cv-09864 (S.D.N.Y.).

• NSHEPP is court-appointed PSLRA lead plaintiff, represented by Pomerantz as court-appointed lead counsel, overseeing all securities claims against Comerica and certain of its officers. NSHEPP has litigated two motions to dismiss and is now appealing the district court's dismissal of its third amended complaint on

16

loss causation grounds. *See Ramos v. Comerica Incorporated,* 2:23-cv-06843-SB-JPR (C.D. Cal.).

•       NSHEPP, represented by Pomerantz, successfully pursued individual claims within Multidistrict Litigation 2185 to recover its investment losses in BP common stock stemming from BP's 2010 Gulf of Mexico oil spill. Pomerantz's 35 institutional clients, including NSHEPP, survived three motions to dismiss and set ground-breaking precedent, including, *inter alia*: (1) the first rulings allowing foreign investors to pursue foreign law claims, seeking recovery for losses in a foreign company's foreign-traded securities, in a U.S. court since the decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), which barred application of the U.S. federal securities laws to securities traded outside the U.S.; (2) a decision rejecting BP's argument that the Securities Litigation Uniform Standards Act of 1998, which extinguishes U.S. state law claims in deference to the U.S. federal securities laws, should be extended to foreign common law claims (and cause their dismissal); and (3) a ruling of first impression validating "holder claims" under English common law for investment losses incurred by retaining already-owned shares (as versus purchasing new shares) in reliance on a fraud, a theory of recovery barred under the U.S. federal securities laws since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). After nine years of hard-fought litigation, NSHEPP, along with Pomerantz's other clients, secured a confidential, favorable

17

monetary settlement in Q1 2021. *See Nova Scotia Health Employees' Pension Plan v. BP, plc*, Civ. Act. No. 4:13-cv-03397 (S.D. Tex.); *In re BP p.l.c. Securities Litigation*, 4:10-md-02185 (S.D. Tex.).

In these litigations, NSHEPP has been represented by its choice of counsel here, Pomerantz. As such, for well over a decade, NSHEPP has demonstrated a track record of diligence, tenacity, patience, and success in past securities litigation with Pomerantz as its chosen counsel.

NSHEPP has thus proffered evidence as to its *prima facie* suitability to serve as court-appointed PSLRA Lead Plaintiff overseeing this litigation.

### 1. NSHEPP Is the Most Adequate Plaintiff Within the Meaning of the PSLRA

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')." *See* 15 U.S.C. §78u-4(a)(3)(B)(i). NSHEPP is the "most adequate plaintiff" within the meaning of the PSLRA and should therefore be appointed as Lead Plaintiff.

### a. NSHEPP Has the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). To the best of its knowledge, NSHEPP has the largest financial interest of any Organon investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Exchange Act §10(b), courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, Civ. Act. Nos. 97 C 2715, 2716, 2737, 3791, 3767, 4237, 4013, 4236, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997): (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. In accord with other courts nationwide, these so-called *Lax* factors have been adopted and routinely applied by courts in this Judicial District. *See, e.g.*, *Rubenstahl v. Philip Morris Int'l, Inc.*, Civ. Act. No. 17-13504, 2019 WL 585429, at *2 (D.N.J. Feb. 13, 2019) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)); *Smith v. Antares Pharma, Inc.*, Civ. Act. No. 17-8945, 2018 WL 3611067, at *2 (D.N.J. July 27, 2018).

As a threshold matter, the Court should assess financial interest at this stage of the litigation with reference to the broader Class Period alleged in *Lerner*

19

(November 3, 2022 through April 30, 2025, inclusive), rather than *Hauser*'s shorter and less inclusive class period (October 31, 2024 through April 30, 2025, inclusive). At the lead plaintiff appointment stage of PSLRA actions, where different class periods are alleged among related actions that are the subject of consolidation motions, courts generally adopt the longest and most inclusive of the possible class periods for the purposes of assessing financial interest and appointing a lead plaintiff. *See*, *e.g.*, *Himes v. Five Below, Inc.*, Civil Act. Nos. 24-3638, 24-4905, 2024 WL 4596235, at *2 n.3 (E.D. Pa. Oct. 28, 2024) ("Courts considering lead plaintiff motions typically accept the longer class period pleaded at this stage of litigation."). Here, *Lerner* alleges a Class Period beginning roughly two years earlier than that alleged in *Hauser*, which, among other things, expands the membership of the Class to include more investors that might benefit from any recovery in this litigation. Accordingly, for all these reasons, the Court should adopt the longer *Lerner* Class Period for the purposes of financial interest assessment and lead plaintiff appointment.

During the *Lerner* Class Period, NSHEPP: (1) purchased or acquired 101,600 shares of Organon common stock; (2) expended $1,864,702 on Organon common stock; (3) retained all 101,600 shares of Organon common stock when the Defendants' alleged fraud was revealed; and (4) incurred losses of approximately $903,843. Thus, under the *Lax* factors, NSHEPP believes it has the largest financial

20

interest among any potential lead plaintiff movants in this litigation, thereby entitling NSHEPP to a rebuttable presumption that it is the "most adequate plaintiff" within the PSLRA's meaning (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)), given that it also satisfies the requirements of Rule 23.

### b.      NSHEPP Otherwise Satisfies the Requirements of Rule 23

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that it is the "most adequate plaintiff," it must also demonstrate that it "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). At this stage of the inquiry, courts need only consider typicality and adequacy. *See, e.g.*, *Kanefsky v. Honeywell Int'l Inc.*, Civ. Act. No. 18-15536, 2019 WL 936662, at *2 (D.N.J. 2019) ("To satisfy the requirements of Rule 23, a prospective lead plaintiff need only make an initial showing of typicality and adequacy."); *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*, Civil Act. Nos.: 15-cv-7350, 15-cv-7380, 15-cv-07448, 2016 WL 3032684, at *6 (D.N.J. May 26, 2016) (same).

NSHEPP satisfies the threshold for Rule 23(a)(3) typicality. Typicality is established when "the claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if it is based on the same legal theory." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). *See also Amicus Therapeutics*, 2016 WL 3032684, at *7 (same). NSHEPP's claims are typical of those of the Class members. Like all Class members, NSHEPP alleges

that: (1) Defendants violated the Exchange Act by making false or misleading statements of material facts and/or omitting to disclose material facts concerning Organon; (2) NSHEPP and the Class members purchased or acquired Organon securities during the Class Period at prices allegedly inflated by Defendants' misrepresentations or omissions; and (3) NSHEPP and the Class members were damaged upon the revelation of the truth about Organon's business and operations, which drove Organon's stock price downward. These shared claims, which are based on the same legal theories and arise from the same underlying facts and course of conduct, demonstrate NSHEPP's typicality under Rule 23(a)(3).

NSHEPP also satisfies the Rule 23(a)(4) adequacy requirement. The adequacy of representation requirement of Rule 23(a)(4) is satisfied where a representative party establishes that it "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For the Class's interests to be fairly and adequately represented, the proposed lead plaintiff must show that it: (1) "has the ability and incentive to represent the claims of the class vigorously"; (2) "has obtained adequate counsel"; and (3) poses no conflict between his claims and the members of the class. *In re Cendant Corp. Litigation*, 264 F.3d 201, 265 (3rd Cir. 2001). *See also Montesano v. Eros International PLC*, Civil Act. Nos. 19-14125, 19-14445, 19-18547, 2020 WL 1873015, at *4 (D.N.J. Apr. 14, 2020) ("The adequacy requirement is satisfied if 'both the class representative and its attorneys

22

are capable of satisfying their obligations, and neither has interests conflicting with those of other class members.'" (quoting *Amicus Therapeutics*, 2016 WL 3032684, at *7). Here, NSHEPP's signed Certification declares its commitment to protect the Class's interests. *See* Tuccillo Decl., Ex. C. NSHEPP has no conflicts of interest or antagonism with the Class of Organon investors it seeks to represent. NSHEPP's significant losses from its investments in Organon securities demonstrate that it has a sufficient interest in the outcome of this litigation that aligns with the interests of Class members. *See Phetteplace v. Cancer Genetics, Inc.*, 2018 WL 11233227, at *4 (D.N.J. 2018) (noting investor's "significant financial stake in this litigation in itself provides an adequate incentive to vigorously prosecute the action" on behalf of the class). Moreover, NSHEPP has been certified as a class representative in multiple securities class actions, including the *Emergent* lawsuit where NSHEPP achieved a $40 million class-wide recovery, further demonstrating its adequacy.

As noted above, NSHEPP is also a large pension fund and sophisticated institutional investor with significant assets under management. Its service as Lead Plaintiff would satisfy the PSLRA's express legislative intent. In enacting the PSLRA, Congress intended to "increas[e] the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733. Congress noted the outsized

23

marketplace presence of institutional investors as creating a powerful incentive on their part to ensure securities litigation is well-conducted. *Id.* (noting that institutions held $9.5 trillion in total assets and 51% of the equity market when the PSLRA was passed and "have the most to gain from meritorious securities litigation"). Congress specifically highlighted the unique role of pension funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect the interest of class members. *Id.* (noting that pension funds held $4.5 trillion or nearly half of all institutional assets). To this end, courts in this Judicial District consistently recognize that Congress intended the PSLRA to place institutional investors like NSHEPP in charge of securities class actions, recognizing the clear advantages of doing so. *See*, *e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("[T]he purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent classmembers [*sic*]"); *Christian v. BT Group PLC*, Civ. Act. No. 17-cv-00497, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (appointing pension fund as lead plaintiff, "not[ing] also, as other courts have, that the Pension Fund is the kind of institutional investor that Congress specifically intended to serve as lead plaintiff when it enacted the PSLRA."); *Grodko v. Cent. European Distribution Corp.*, Civ. Act. No. 12-5530, 2012 WL 6595931, at *8 (D.N.J. Dec. 17, 2012) (appointing lead plaintiff, citing its status as "an institutional investor, *i.e.*, the type

24

of investor whom Congress encouraged to serve as lead plaintiff by enacting the PSLRA"). So great is the statutory and judicial preference for institutional investors to serve as PSLRA lead plaintiffs that courts will appoint institutions as lead plaintiffs even over competing non-institutional investors with larger losses. *Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 847, 853-55 (E.D. Pa. 2018) (concluding that "the institutional investor preference outweighs the presumptive lead plaintiff rule" in appointing an institutional investor as lead plaintiff over non-institutional investors with slightly larger losses).

### c. The Presumption Favoring NSHEPP Cannot Be Rebutted

The presumption favoring NSHEPP's appointment as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interest of the class; or

(bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(II). NSHEPP's ability and desire to fairly and adequately represent the Class has been discussed above and cannot be credibly disputed. NSHEPP is not aware of any unique defenses Defendants could raise that would render it inadequate to represent the Class. NSHEPP's prior, successful

25

service as court-appointed lead plaintiff in other securities class actions demonstrates its ability to fairly and adequately represent the Class here.

### D. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See id.* §78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Roby*, 2015 WL 1334320, at *14 ("Under the PSLRA, [the] task of selecting lead counsel is given to the most adequate plaintiff, subject to the approval of the court.").

NSHEPP has selected Pomerantz to serve as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions and recovered billions of dollars on behalf of investors over its 80+ year history, as detailed in its firm resume. *See* Tuccillo Decl., Ex. D. Pomerantz is based in New York, with offices in Chicago, Los Angeles, Paris, Tel Aviv, and London, and the firm regularly litigates federal securities fraud class actions in courts nationwide. As lead counsel in *In re Petrobras Securities Litigation*, Civ. Act. No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of Petrobras investors, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the U.S. *Id.*

26

The Pomerantz Partner who will oversee this litigation, Matthew L. Tuccillo, has over 25 years of relevant experience, including most recently as lead litigation counsel in the securities fraud class action lawsuit where NSHEPP secured a $40 million class-wide settlement that was granted final approval in *In re Emergent Biosolutions, Inc. Sec. Litig*., Civ. Act. No. 21-CV-00955, 2025 WL 654108, at *2 (D. Md. Feb. 27, 2025).  He has represented NSHEPP for well over a decade, including in the *McDermott*, *MINISO*, *Comerica*, and *BP* matters discussed above. His work on other securities fraud class action lawsuits within the Third Circuit includes serving as lead counsel in *In re Toronto-Dominion Bank Securities Litigation*, Civ. Act. No. 17-cv-01735 (D.N.J.), which was resolved for a $13.25 million class-wide settlement.

As a result of its extensive experience in litigation involving issues similar to those raised in the Related Actions, NSHEPP's choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, tenacity, and experience that will enable it to prosecute the consolidated action effectively and expeditiously.  The Court can be assured that by approving NSHEPP's selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available.  Thus, NSHEPP respectfully urges the Court to appoint its choice of counsel, Pomerantz, to serve as Lead Counsel.

## IV.    CONCLUSION

For the foregoing reasons, NSHEPP respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) granting NSHEPP's Motion; (3) appointing NSHEPP as Lead Plaintiff for the Class; (4) approving NSHEPP's selection of Pomerantz as Lead Counsel for the Class; and (5) denying all competing lead plaintiff motions filed by other investors.

Dated:  July 22, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Matthew L. Tuccillo*
Jeremy A. Lieberman*
J. Alexander Hood II*
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
mltuccillo@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Lead Plaintiff Movant Nova Scotia Health Employees' Pension Plan and Proposed Lead Counsel for the Class*

*\*Pro hac vice applications forthcoming*

28