**COHN LIFLAND PEARLMAN**
 **HERRMANN & KNOPF LLP**
Audra DePaolo
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: (201) 845-9600
Facsimile: (201) 845-9423
ad@njlawfirm.com

Local Counsel for Plaintiff Movant Michigan
 Regional Council of Carpenters Annuity Fund

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH HAUSER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ORGANON & CO., KEVIN ALI, and MATTHEW WALSH,<br><br>Defendants. | Case No. 2:25-cv-05322-JXN-CLW<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY MICHIGAN REGIONAL COUNCIL OF CARPENTERS ANNUITY FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**<br><br>**MOTION DATE: August 18, 2025** |

|  |  |
|---|---|
| BARRY J. LERNER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ORGANON & CO., KEVIN ALI, MATTHEW WALSH, and JUAN CAMILO ARJONA FERREIRA,<br><br>Defendants. | Case No. 2:25-cv-12983-JXN-CLW |

2

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ....................................................................................2

ARGUMENT ...........................................................................................................4

    I.      THE ACTIONS SHOULD BE CONSOLIDATED ............................4

    II.     ANNUITY FUND IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF .......................................................................................5

          A.     Annuity Fund Filed a Timely Motion ......................................7

          B.     Annuity Fund Has the Largest Financial Interest in the Relief Sought by the Class.....................................................8

          C.     Annuity Fund Satisfies Rule 23....................................................9

    III.    ANNUITY FUND'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED ................................................................11

CONCLUSION .......................................................................................................13

i

## Table of Authorities

**Page(s)**

**Cases**

*In re Able Lab'ys. Sec. Litig.*,
   425 F. Supp. 2d. 562 (D.N.J. 2006) ........................................................................8

*Aguilar v. Vitamin Shoppe, Inc.*,
   2018 WL 1960444 (D.N.J. Apr. 25, 2018) ...........................................................12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................6, 8

*D'Agostino v. Innodata, Inc.*,
   2024 WL 4615728 (D.N.J. Oct. 30, 2024)............................................6, 8, 10, 11

*Goines v. Celsius Network, LLC*,
   2023 WL 2945897 (D.N.J. Apr. 14, 2023) ......................................................10, 11

*Greene v. Prince*,
   2023 WL 6785119 (D.N.J. Oct. 13, 2023).............................................................10

*Kanefsky v. Honeywell Int'l Inc.*,
   2019 WL 936662 (D.N.J. Feb. 26, 2019)................................................................6

*Lerner v. Organon & Co.*,
   No. 2:25-cv-12983 . ECF No. 1 ..............................................................................1

*In Re Lucent Techs. Sec. Litig.*,
   221 F. Supp. 2d 472 (D.N.J. 2001) .........................................................................4

*Montesano v. Eros Int'l PLC*,
   2020 WL 1873015 (D.N.J. Apr. 14, 2020) ............................................................11

*Nanavati v. Burdette Tomlin Mem'l Hosp.*,
   857 F.2d 96 (3d Cir. 1988)......................................................................................4

*Patel v. Coinbase Glob., Inc.*,
   2022 WL 17582549 (D.N.J. Dec. 12, 2022) ........................................................2, 6

*Pope v. Navient Corp.*,
   2018 WL 672640 (D.N.J. Feb. 2, 2018)..................................................................4

*Roby v. Ocean Power Techs., Inc.*,
    2015 WL 1334320 (D.N.J. Mar. 17, 2015) ........................................................8

*Stires v. Eco Science Sols., Inc.*,
    2018 WL 5784817 (D.N.J. Feb. 14, 2018) ........................................................4

**Statutes**

15 U.S.C. §78u-4(a)(1) ........................................................5

15 U.S.C. §78u-4(a)(3)(A)(i) ........................................................5, 7

15 U.S.C. §78u-4(a)(3)(B) ........................................................*passim*

PSLRA ........................................................*passim*

Securities Exchange Act of 1934 §§10(b) and 20(a), 15 U.S.C.
    §§78j(b) and 78t(a) ........................................................1

**Other Authorities**

17 C.F.R. §240.10b-5 ........................................................1

Federal Rules of Civil Procedure Rule 23 ........................................................2, 6, 9, 11

Rule 10b-5 ........................................................1

Rule 42(a) ........................................................4, 5

Lead Plaintiff Movant Michigan Regional Council of Carpenters Annuity Fund ("Annuity Fund" or "Movant"), on behalf of itself and all others similarly situated, respectfully submits this Memorandum of Law in support of its Motion to: (1) consolidate the above-captioned related actions; (2) appoint Annuity Fund as Lead Plaintiff for the putative Class; (3) approve Annuity Fund's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the putative Class; and (4) grant such other and further relief as the Court may deem just and proper.[1]

## **PRELIMINARY STATEMENT**

Presently pending before the Court are two securities class actions (the "Related Actions") brought on behalf of persons and entities that purchased shares of Organon & Co. ("Organon" or the "Company") securities between November 3, 2022 and April 30, 2025, inclusive (the "Class Period").  The Related Actions allege violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

---

[1]    Defined terms have the same definitions as in the complaint filed on July 8, 2025 in the action captioned *Lerner v. Organon & Co.*, No. 2:25-cv-12983 (the "*Lerner* Complaint" filed in the "*Lerner* Action").  ECF No. 1.  Unless otherwise noted, all "¶" and "¶¶" citations refer to the *Lerner* Complaint.

1

The Private Securities Litigation Reform Act of 1995, *as amended*, 15 U.S.C. §78u-4(a)(3)(B) ("PSLRA"), provides that a court must appoint as lead plaintiff the "'most adequate plaintiff.'"   15 U.S.C. §78u-4(a)(3)(B)(i); *see, e.g., Patel v. Coinbase Glob., Inc.*, 2022 WL 17582549 (D.N.J. Dec. 12, 2022).  Annuity Fund is the most adequate movant because it timely moved to be Lead Plaintiff, has the largest financial interest in the litigation (approximately $192,000 in recoverable losses), and satisfies the representative requirements set forth in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").   *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

For the reasons summarized herein and discussed more fully below, Annuity Fund's Motion should be approved in its entirety.

## FACTUAL BACKGROUND

On May 23, 2025, Plaintiff Joseph Hauser filed a complaint to commence the first filed action against Organon and related defendants (collectively, "Defendants") (the "*Hauser* Complaint").   The *Hauser* Complaint alleged that, between October 31, 2024 and April 30, 2024, Defendants concealed material information pertaining to Organon's capital allocation priorities, particularly the future of the quarterly dividend payout. *Hauser* Complaint ¶23.  Specifically, Defendants assured investors that Organon was "well on track to deliver approximately $1 billion of free

2

cash flow" and that the Company's dividend payout was the Company's "number one priority." *Hauser* Complaint ¶¶20-23.

On July 8, 2025, Plaintiff Barry J. Lerner filed a second, similar complaint against Defendants (the "*Lerner* Complaint"). The *Lerner* Complaint alleges substantially similar theories of recovery as the *Hauser* Complaint. Specifically, the *Lerner* Complaint alleges that, between November 3, 2022 and April 30, 2025, Defendants failed to disclose that: (1) Organon faced a higher risk of loss of exclusivity ("LOE") and price erosion as to Nexplanon, Organon's patented contraceptive implant; (2) as a result, Nexplanon sales growth would not be as strong as Defendants led the market to believe; (3) as a result, Organon was not likely on track to maintain the sub-4.0x debt leverage Defendants claimed; (4) as a result, Organon was not on track to achieve, much less maintain, the $1 billion in free cash flow required to sustain its outsized dividend; (5) as a result, Organon would not be able to maintain its corporate debt ratings at a high enough level to keep its corporate costs as low as Defendants assured investors they would be. *Lerner* Complaint ¶¶26, 76.

Both the *Lerner* Complaint and the *Hauser* Complaint allege that the truth was revealed on May 1, 2025, when the Company announced its earnings results for first quarter 2025. *Lerner* Complaint ¶¶78-81; *see also Hauser* Complaint ¶¶24-28. Specifically, Organon announced that it would slash its dividend by 90%, down from

3

$0.28 per share per quarter to just $0.02 per share per quarter. *Lerner* Complaint ¶78; *see also Hauser* Complaint ¶24. During the associated earnings call on the same day, the Company also revealed that it cut the dividend to improve Organon's valuation in the near-term by managing its leverage and growth, and because "returning capital to shareholders" was "less of a priority." *Lerner* Complaint ¶¶79-80; *see also Hauser* Complaint ¶¶25-26.

On this news, the price of Organon's stock fell nearly 27% from $12.93 per share to close at $9.45 on May 1, 2025, severely harming investors. *Lerner* Complaint ¶81; *see also Hauser* Complaint ¶29.

## ARGUMENT

### I.    THE ACTIONS SHOULD BE CONSOLIDATED

Under Rule 42(a), consolidation is appropriate when actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 103 n.3 (3d Cir. 1988). "[T]he [PSLRA] 'directs that cases should be consolidated where there is more than one action on behalf of a class asserting substantially the same claim or claims.'" *Pope v. Navient Corp.*, 2018 WL 672640, at *1 (D.N.J. Feb. 2, 2018) (quoting *In Re Lucent Techs. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001)). Actions need not allege identical facts, claims, or class periods to be consolidated. *See Stires v. Eco Science Sols., Inc.*, 2018 WL 5784817, at *3 (D.N.J. Feb. 14, 2018) (consolidating securities class actions

4

proposing different class periods because "[d]espite minor differences, the complaints center on the same set of operative facts during substantially the same time period").

The Related Actions present substantially similar factual and legal issues and allege the same violations of the federal securities laws against nearly identical defendants and on behalf of very similar classes. Because the Related Actions are based on substantially similar facts and involve essentially the same subject matter, discovery obtained in one lawsuit will undoubtedly be relevant to all others and common questions of law and fact will predominate in these actions. Accordingly, consolidation under Rule 42(a) is appropriate here. *See id.*

## II.    ANNUITY FUND IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *Id.* at (a)(3)(B). First, the plaintiff who files the action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice"). 15 U.S.C. §78u-4(a)(3)(A)(i). Second, within 60 days after publication of the Early Notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff. *Id.*

5

Finally, "the Court must 'appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members' (termed the 'most adequate plaintiff')." *Patel*, 2022 WL 17582549, at *2 (quoting 15 U.S.C. §78u-4(a)(3)(B)(i)). "The PSLRA 'establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption.'" *Id.* (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)). First, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member who: (a) "has either filed [a] complaint or made a motion [for lead plaintiff] in response to a notice"; (b) "has the largest financial interest in the relief sought"; and (c) "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc); *see also Kanefsky v. Honeywell Int'l Inc.*, 2019 WL 936662, at *1 (D.N.J. Feb. 26, 2019). The Rule 23 element of the presumption necessitates only a "'prima facie showing of typicality and adequacy.'" *D'Agostino v. Innodata, Inc.*, 2024 WL 4615728, at *3 (D.N.J. Oct. 30, 2024) (quoting *Cendant Corp.*, 264 F.3d at 263). Second, so long as the presumption is not rebutted, the "most adequate plaintiff" shall be appointed the lead plaintiff. *Id.*, at *4. As demonstrated below, Annuity Fund meets these requirements and should be appointed to serve as Lead Plaintiff.

## A.    Annuity Fund Filed a Timely Motion

On May 23, 2025, the same day the *Hauser* Action was filed, a notice of pendency of the action was published on *Globe Newswire*, a national newswire service (the "*Hauser* Early Notice"). *See* Declaration of Audra DePaolo ("DePaolo Decl.") filed in support hereof, Ex. A. The requirements of §78u-4(a)(3)(A)(i) have, therefore, been met. The *Hauser* Early Notice states that those wishing to serve as lead plaintiff have "until July 22, 2025" to move for appointment (*i.e.*, within 60 days of publication of the *Hauser* Early Notice). *See id*. This Motion is being filed on July 22, 2025.

On July 8, 2025, the same day the *Lerner* Action was filed, a notice of pendency of the action was published on *PRNewswire.*, a national newswire service (the "*Lerner* Early Notice"). *See* DePaolo Decl. Ex. B. The *Lerner* Early Notice also stated that those wishing to serve as lead plaintiff have until July 22, 2025 to move for appointment. *See id.*

Annuity Fund's Motion for appointment as Lead Plaintiff is therefore timely filed. Moreover, Annuity Fund has submitted a certification stating its willingness to serve as a representative party on behalf of the Class and providing its Class Period transactions. *See* DePaolo Decl. Ex. C.

**B.** **Annuity Fund Has the Largest Financial Interest in the Relief Sought by the Class**

To its knowledge, Annuity Fund is the Lead Plaintiff movant with the largest financial interest in the relief sought by the Class. "The Third Circuit has been clear that '[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status. The process begins with the identification of the movant with the largest financial interest in the relief sought by the class.'" *D'Agostino*, 2024 WL 4615728, at *2 (quoting *Cendant Corp.*, 264 F.3d at 262). In doing so, "[c]ourts have discretion to appoint an investor with the largest stake in the litigation." *Roby v. Ocean Power Techs., Inc.*, 2015 WL 1334320, at *5 (D.N.J. Mar. 17, 2015) (citing *Cendant Corp.*, 264 F.3d at 262). "The Third Circuit has concluded that 'largest financial interest' means the largest loss." *Id.*, at *5 (citing *Cendant Corp.*, 264 F.3d at 223); *see also In re Able Lab'ys. Sec. Litig.*, 425 F. Supp. 2d. 562, 567 (D.N.J. 2006) (same). "In making this determination, 'courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs.'" *D'Agostino*, 2024 WL 4615728, at *2 (quoting *Cendant Corp.*, 264 F.3d at 262). To that end, district courts within the Third Circuit "have accorded the third element, the largest financial loss, the greatest weight." *Roby*, 2015 WL 1334320, at *5 (collecting cases).

8

As evidenced by its PSLRA certification and the charts detailing its transactions and losses, Annuity Fund purchased Organon securities on the New York Stock Exchange during the Class Period and suffered losses as a result of Defendants' misconduct.  *See* DePaolo Decl. Exs. C & D.  Specifically, Annuity Fund suffered losses of approximately $192,000.  *See* DePaolo Decl. Ex. D.  As to the other factors courts look to, Annuity Fund purchased 29,400 total shares of Organon securities during the Class Period, retained 29,400 shares as of the end of the Class Period, and expended approximately $470,208 on its purchases of Organon securities during the Class Period.  *Id.*

Annuity Fund thus has a significant financial interest in this case.  Moreover, Annuity Fund is unaware of any other movant that has sustained greater financial losses in connection with their Organon transactions during the Class Period.  Therefore, Annuity Fund has the "largest financial interest in the relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### C.    Annuity Fund Satisfies Rule 23

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.* at (B)(iii)(I)(cc).  Of the Rule 23 prerequisites, only two − typicality and adequacy − directly address the personal characteristics of the lead plaintiff

9

movant. Consequently, in deciding a motion to appoint lead plaintiff, the court need only make findings as to the typicality and adequacy of the proposed lead plaintiff and, at this stage, those findings need only be "'prima facie.'" *D'Agostino*, 2024 WL 4615728, at *3.

"[T]he typicality requirement is satisfied when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) [its] claims are based on the same legal issues." *D'Agostino*, 2024 WL 4615728, at *3. Here, the claims asserted by Annuity Fund are typical of the claims of the other members of the putative Class because, like all other Class members, it: (1) purchased shares of Organon securities during the Class Period; (2) was adversely affected by Defendants' allegedly false and misleading statements and omissions; and (3) suffered damages as a result thereof. Since Annuity Fund's claims are based on the same legal theories and arise from the same event, practice, or course of conduct that gives rise to the claims of other Class members, typicality is satisfied. *See Greene v. Prince*, 2023 WL 6785119, at *3 (D.N.J. Oct. 13, 2023); *Goines v. Celsius Network, LLC*, 2023 WL 2945897, at *5 (D.N.J. Apr. 14, 2023).

With respect to adequacy, a plaintiff is an adequate class representative when it possesses common interests and an absence of conflict with fellow class members and the plaintiff's attorneys are qualified, experienced, and able to vigorously

conduct the litigation. *See D'Agostino*, 2024 WL 4615728, at \*3. Annuity Fund is "adequate" to serve as Class representative in the instant litigation because its interests are aligned with the interests of the putative Class. Annuity Fund, like all other members of the Class, suffered losses as a result of purchasing Organon securities at prices that were artificially inflated due to Defendants' alleged misstatements. Annuity Fund will, therefore, benefit from the same relief as other Class members. Finally, Annuity Fund has demonstrated that it is an adequate representative by retaining competent and experienced counsel. *See Goines*, 2023 WL 2945897, at \*9 (considering qualifications of proposed lead counsel in evaluating adequacy); *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at \*12 (D.N.J. Apr. 14, 2020) (same). As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Accordingly, Annuity Fund has made a *prima facie* showing that it satisfies the requirements of Rule 23 for the purposes of this motion.

III.   **ANNUITY FUND'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). In making this determination, a court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class[.]" *Id*. at (B)(iii)(II)(aa). "The court should generally employ a deferential standard in

11

reviewing the lead plaintiffs['] choices for counsel." *Aguilar v. Vitamin Shoppe, Inc.*, 2018 WL 1960444, at *11 (D.N.J. Apr. 25, 2018).

Annuity Fund has selected the law firm of Scott+Scott to represent the Class. Scott+Scott has substantial experience in the prosecution of securities fraud class actions, possesses the necessary resources to efficiently conduct this litigation, and will vigorously prosecute this case on behalf of Annuity Fund and the putative Class.[2]  *See* DePaolo Decl. Ex. E (Scott+Scott firm résumé).  Also, Scott+Scott currently serves as lead or co-lead counsel in numerous securities class actions pending in several U.S. District Courts, including in this District.[3]  *See also id.*

---

[2]  Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.,* HUD-L-003492-1 (Hudson Cnty. N.J. Super. Ct. NJ) ($102.5 million); *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am.*, *N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys.*, *Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million).

[3]  *See, e.g.*, Current Lead Counsel Appointments include: *City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, 2:23-cv-04146 (D.N.J.); *Giraudon v. Innovative Indus. Props., Inc.*, No. 1:25-cv-00182 (D. Md.); *Kohil v. Actinium Pharms., Inc.*, No. 1:25-cv-02553 (S.D.N.Y.); *Jewik v. TransMedics Grp., Inc.*, No. 1:25-cv-10385 (D. Mass.); *White v. Brooge Energy Ltd.*, No. 2:24-cv-00959 (C.D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 3:24-cv-08869 (N.D. Cal.); *Marselis v. Fox Factory Holding Corp.*, No. 1:24-cv-00747 (N.D. Ga.); *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.).

In light of the foregoing, the Court should approve Annuity Fund's selection of Scott+Scott as Lead Counsel. The Court can be assured that by approving Annuity Fund's choice of Lead Counsel, the putative Class will receive the highest caliber of representation.

## CONCLUSION

For all the foregoing reasons, Annuity Fund respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Annuity Fund as Lead Plaintiff on behalf of the Class; (3) approve Annuity Fund's selection of Scott+Scott as Lead Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

DATED: July 22, 2025

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
s/ Audra DePaolo
Audra DePaolo
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: (201) 845-9600
Facsimile: (201) 845-9423
ad@njlawfirm.con

*Local Counsel for [Proposed] Lead Plaintiff Movant Michigan Regional Council of Carpenters Annuity Fund*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Donald A. Broggi (*pro hac vice* forthcoming)
Thomas L. Laughlin, IV (*pro hac vice* forthcoming)
Jonathan M. Zimmerman
Kassandra A. Nelson (*pro hac vice* forthcoming)

13

Nicholas S. Bruno (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
dbroggi@scott-scott.com
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com
knelson@scott-scott.com
nbruno@scott-scott.com

*Counsel for [Proposed] Lead Plaintiff Movant Michigan Regional Council of Carpenters Annuity Fund and Proposed Lead Counsel for the Class*

14